Lee **KERN, et al., Plaintiffs**

v.

**JEPPESEN SANDERSON, INC.,**
et al., Defendants.

Civ. A. Nos. H–93–3065,
G–93–601 and G–93–610.

United States District Court,
S.D. Texas,
Houston Division.

June 13, 1994.

Michael John Maloney, Fisher Gallagher & Lewis, Houston, TX, for Lee Kern, Dianne Kern, Hilda Pokhrel, James Gwin, Jr., Reginald George Duhig, and William E. Nordmann, Sr.

Charles F. Krause, San Antonio, TX, for A.M. Driessen, and Th. A.A. Driessen Voorhout.

Richard H. Caldwell, Mayor Day Caldwell & Keeton, Houston, TX, James M. Fitzsimons, Mendes & Mount, New York City, for Jeppesen Sanderson Inc., Jeppesen & Co. GMBH, The Times Mirror Co. and Sundstrand Avionic Systems.

Jacques E. Soiret, Kirtland & Packard, Los Angeles, CA, Thad T. Dameris, Vinson & Elkins, Houston, TX, for Airbus Industrie GIE, AVSA S.A.R.L. and AINA Holdings Inc.

Thad T. Dameris, Vinson & Elkins, Houston, TX, for Airbus Service Co., Inc.

Michael V. Powell, Locke Purnell Rain Harrell, Dallas, TX, for Aerospatiale Societe Nationale Industrielle.

## MEMORANDUM AND ORDER

NORMAN W. BLACK, Chief Judge.

This is a wrongful death/products liability case which consists of three consolidated cases arising out of two separate airplane crashes. One involved a Pakistan International Airlines ("PIA") flight from Pakistan to Nepal that occurred on September 28, 1992. The other crash occurred on July 31, 1992, and involved a Thai Airways International ("TAI") commercial flight between Bangkok and Nepal. Both crashes occurred northeast of Kathmandu, Nepal. The Government of Nepal investigated both crashes and concluded they were caused by pilot error.

Plaintiffs claim to be citizens of Canada, France, Germany, Great Britain, Israel, Japan, Korea, Nepal, the Netherlands, New Zealand, Norway, Pakistan, Spain, California, and several other states. None of the victims were residents of Texas or had any apparent connection with this state.

The Airbus Defendants are Airbus Industrie GIE ("AI"), AVSA S.A.R.L., ("AVSA"), Airbus Services Co., Inc. and AINA Holdings. Plaintiffs filed an unopposed motion to dismiss all of these Defendants except for AI which was granted. AI is a French entity with its principal place of business in Toulouse, France. Plaintiffs allege AI designed, tested, certified, manufactured, assembled, marketed, and sold the aircraft. Defendant Aeroformation ("AeF") is a French entity with its principal place of business in Blagnac, France. Plaintiffs contend AeF trained the pilots that operated the TAI aircraft.

The pilots allegedly used approach charts manufactured by one of the Jeppesen Defendants. Jeppesen & Co., GmbH is a German company. Jeppesen Sanderson, Inc. is a Delaware corporation with its principal place of business in Colorado. Both airplanes were equipped with a Ground Proximity Warning System (GPWS) manufactured by Defendant Sundstrand Corp. which was sued incorrectly as Sundstrand Avionic Systems, a Division of Sundstrand Aerospace (a Group of Sundstrand Corporation). Sundstrand Corp. is a Delaware Corporation with its principal place of business in Illinois.

In November 1987 AVSA sold an Airbus A310–304 C model aircraft, manufacturer's serial No. 438, registration No. HS–TID, to WardAir Canada, Inc. in France. The aircraft was designed, assembled and tested by AI prior to November 1987. From November 1987 to May 1990, this plane was operated by WardAir and Canadian International. It was then operated by TAI on lease from Blenheim Aviation from 1990 until the crash in 1992.

From 1990 through July 1992 the aircraft was operated and maintained by TAI in Thailand and a Certificate of Airworthiness was issued by the Thai Civil Aviation Authority. The pilots were trained by TAI in Thailand. Tickets for the fatal crash were purchased in either Thailand or Nepal. All documents relating to the design, manufacture and assembly of the airplanes are in France. Records concerning the training and testing of the pilots and the maintenance of the aircraft are in Thailand.

The second plane was an Airbus A300–B4 2C model aircraft, manufacturer's serial No. 025, registration No. AP–BCP. In 1977 AI sold it to Defag–Deutsche Flugzeugvermietungs AG & Co KG ("Defag") in France. Defag then sold the plane to Hapag–Lloyd Fluggesellschaft mbH ("Hapag–Lloyd"). In April 1986, Hapag–Lloyd sold the aircraft to PIA which owned, maintained, and operated it until the crash.

A Certificate of Airworthiness was issued by the Pakistan Civil Aviation Authority. Pilots were trained by PIA in Pakistan and tickets for the fatal flight were purchased in either Pakistan or Nepal. All documents relating to the design, assembly, and sale of the aircraft or the training and testing of the pilots are located in Pakistan. This is also true of the maintenance records. Documents relating to the official government investigation of the crash are located in France and Nepal.

Eyewitnesses to both of the crashes and the subsequent rescue operations are in Nepal as is the wreckage of both aircraft. Many of the documents relating to the airplanes, crashes and Defendants are in French.

Plaintiffs have thrown a little bit of everything into their complaints. Although these cases were consolidated early in the litigation, several attorneys continue to treat them as separate cases. Numerous motions are pending. They include Defendants' motions to dismiss, for more definite statement, and for summary judgment as well as Plaintiffs' motion to remand. Since the cases have been consolidated, the Court takes the position that any motion filed in one of the consolidated cases will be treated as if it was filed in all applicable situations.

*Subject Matter Jurisdiction*

**Foreign Sovereign Immunities Act**

██ The first issue that must be addressed is whether this Court has jurisdiction over the litigation and the various parties. The Airbus Defendants contend removal was proper and that this Court has jurisdiction pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* because AI is a "foreign state" within the meaning of the FSIA. The removal statute provides that

> Any civil action brought in a State court against a foreign state as defined in section 1603(a) . . . may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. . . .

28 U.S.C. § 1441(d).

According to section 1603

> (a) a "foreign state" includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state....
>
> (b) An "agency or instrumentality of a foreign state" means any entity—
>
> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State or the United States ... nor created under the laws of any third country.

As a result, the foreign state has an absolute right of removal to the federal courts. 28 U.S.C. § 1441(d). "It enables foreign states, at their option, to avoid any local bias or prejudices possibly inherent in state court proceedings and also to avoid trial by jury." *In re Delta America Re Insurance Co.*, 900 F.2d 890, 893 (6th Cir.), *cert. denied sub nom., Wright v. Arion Insurance Co.*, 498 U.S. 890, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990). The FSIA is interpreted broadly. *See Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir.1990), *cert. denied*, 499 U.S. 962, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991).

The issue in this case is whether AI has met the requirements of § 1603(b)(2). This Court must determine whether a majority of the ownership of AI was owned by foreign states during the relevant period. The parties differ as to when the wrongful conduct occurred. Plaintiffs contend it is the dates of the plane crashes while Defendants allege it was the date they sold the airplanes and relinquished control over them. Plaintiffs base their argument on their interpretation of the phrase "the act complained of" and argue this was when the deaths occurred. Since 50% of AI is no longer owned by sovereign entities, Plaintiffs contend it should be denied immunity. However, the negligent acts alleged against AI deal with the design and manufacture of the aircraft.

The "potential sensitivity of actions against foreign states" is still a concern even after the majority of the entity is no longer owned by a foreign state. *Cargill International S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993). If this were not the case, a foreign state could enjoy immunity at the time of the alleged wrongful conduct, but then lose it through reorganization. When reorganizing it would have to continually consider whether a stale claim could be revived in the United States. It has long been the rule that immunity is not lost when a government's interest is later transferred to private ownership. *See In re The Western Maid*, 257 U.S. 419, 433, 42 S.Ct. 159, 161, 66 L.Ed. 299 (1922).

The PIA aircraft was manufactured prior to May 1977. AI has not been in the chain of custody, ownership, or regular maintenance of the aircraft since that date. The von Lachner Declaration shows that in May 1977 France owned 47.80% and Spain 2.76% of AI.

AI designed and assembled the TAI aircraft prior to November 1987. According to the von Lachner Declaration, this aircraft was never returned to AI nor was AI in the chain of custody, ownership or regular maintenance of this plane after that date. Von Lachner states that in November 1987, the composition of AI was 37.88% the government of France, 3.03% the government of Spain and 16.97% the government of Germany.

Plaintiffs argue that pooling has never been recognized by either Congress or the Fifth Circuit and rely exclusively on *Linton v. Airbus Industrie*, 794 F.Supp. 650 (S.D.Tex.1992). However, in that opinion Judge Kent states that "every court that has considered the issue [of pooling several foreign state interests] has approved this type of pooling." *Id.* at 651. He further states that "[i]n the Court's view ... it does not do too much violence to either the plain language or the spirit of FSIA to hold that foreign states may pool their interests in an entity for purposes of determining whether that entity is a foreign state under FSIA." *Id.* at 652. In *Linton* the Court ultimately determined that the FSIA did not apply but that was because it found that the pooling entity itself must be a FSIA sovereign. For the FSIA to apply in *Linton* the German interest had to be included; but, the ownership interest held by the German govern-

ment was through Deutsche Airbus GmbH. The Court found this was not a foreign state for purposes of the FSIA, and as a result the 50% threshold was not met. This issue is not presented in this case. Furthermore, the *Linton* case focused on the construction of Airbus in 1989, not 1977 or 1987.

The FSIA allows the removal of "any civil action" against a foreign state. *Nolan v. Boeing Co.,* 919 F.2d at 1064. It "extend[s] federal court subject matter jurisdiction over the entire action in which the foreign state is a party, rather than simply over the 'claims' in that action which are specifically asserted against the foreign state." *Id.*

 Based on the above, the Court finds that AI is a sovereign entity. It is therefore entitled to immunity unless one of the statutory exceptions applies. *Saudi Arabia v. Nelson,* —— U.S. ——, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). Once the defendant presents a prima facie case that it is a foreign sovereign, the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted. *Baglab Ltd. v. Johnson Matthey Bankers Ltd.,* 665 F.Supp. 289, 293–94 (S.D.N.Y.1987). However, the ultimate burden of persuasion remains with the alleged foreign sovereign. *Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285, 289 n. 6 (5th Cir.1989). Plaintiffs have failed to meet their burden. They argue that AI, if found to be a sovereign entity, is not entitled to sovereign immunity based on exceptions to the FSIA. However, they make only this conclusory statement and fail to develop their argument.

Plaintiffs' also argue that "public record information about the Airbus Defendants' ownership" shows that AI is not owned by foreign states. The sworn testimony of von Lachner, Pinet and Mourey is uncontroverted. Furthermore, the "public records" upon which Plaintiffs rely are unverified, from unrelated sources and from several different years. They are also hearsay. The Court concludes that this allegation lacks merit.

**Federal Question**

 An issue has also been raised as to whether a federal question exists. The reso-

lution of Plaintiffs' state law claims turn on how several U.S. treaties are construed. Plaintiffs' wrongful death and survival actions are governed by Tex.Civ.Prac. & Rem. Code Ann. § 71.031 (Vernon 1986) which deals with incidents occurring out of state. It states:

> (a) an action for damages for the death ... of a citizen of this state, ... or of a foreign country may be enforced in the courts of this state, although the wrongful act, ... causing the death ... takes place in a foreign state or country, if:
>
> > (3) in the case of a citizen of a foreign country, the country has equal treaty rights with the United States on behalf of its citizens.

If no treaty exists or if Plaintiffs contend they are not relying on a treaty, they lack standing to sue. *See, e.g., Dow Chemical Company v. Alfaro,* 786 S.W.2d 674, 675 n. 2 (Tex.1990) *cert. denied,* 498 U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991). If there is a treaty, its construction permits removal based on federal question jurisdiction. *See Hidalgo County Water Control and Improvement District No. 7 v. Hedrick,* 226 F.2d 1, 6 (5th Cir.1955) *cert. denied,* 350 U.S. 983, 76 S.Ct. 469, 100 L.Ed. 851 (1956). Plaintiffs must then show there are specific provisions in the treaty which guarantee the particular litigation rights being asserted. *See Alfaro,* 786 S.W.2d at 675 n. 2. In addition, when deciding if such rights exist, the Court must construe treaties of the United States. As a result, the Court finds there is federal subject matter jurisdiction over Plaintiffs' claims. The fact that Plaintiffs artfully pleaded their case and do not specifically refer to any federal claim or law is irrelevant. *Eitmann v. New Orleans Public Service, Inc.,* 730 F.2d 359, 365 (5th Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984).

There is also federal question jurisdiction because Plaintiffs' claims raise questions of foreign relations which are incorporated into federal common law. *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 425, 84 S.Ct. 923, 938, 11 L.Ed.2d 804 (1964). The fact that foreign countries are not specifically named in the lawsuit is immaterial. All of

the consolidated cases involve foreign-built aircraft, flown by foreign airlines, over foreign airspace, that crashed in a foreign country. The interest these foreign sovereigns have in regulating their aircraft, airlines and airspace outweighs any interest the United States may have in applying its own air safety regulations to these Defendants. "[E]very State has complete and exclusive sovereignty over the airspace above its territory." Convention on International Civil Aviation, article 1. They also control the standards for safety and airworthiness within their country. *Id.* at article 38. Since the interests of foreign countries in this litigation are substantial, there is federal question jurisdiction. *Grynberg Production Corporation v. British Gas, p.l.c.,* 817 F.Supp. 1338, 1353–54 (E.D.Tex.1993).

### Diversity jurisdiction

■ Finally, Defendants argue that their removal was proper because there is complete diversity pursuant to 28 U.S.C. § 1332(a)(3). This statute bestows jurisdiction in a federal district court if the citizen of one state sues citizens of another state or a foreign state. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 828, 109 S.Ct. 2218, 2220, 104 L.Ed.2d 893 (1989). There must be complete diversity among the properly sued domestic parties and a legitimate controversy must exist among the citizens who are parties to the lawsuit. *Goar v. Compania Peruana de Vapores,* 688 F.2d 417, 420 (5th Cir.1982). It appears that Plaintiffs are citizens of California as well as several other states and foreign countries. Defendants are citizens of Colorado, Germany, France, Delaware, Virginia and Illinois.

■ Plaintiffs argue that there is no diversity jurisdiction because The Times Mirror Company ("TMC") is a Delaware corporation with its principal place of business in Los Angeles. Defendants contend it was fraudulently joined and that there is no reasonable basis for imposing liability on this entity. Removal based on diversity is proper if joinder of the non-diverse party was fraudulent. *Villar v. Crowley Maritime Corp.,* 780 F.Supp. 1467, 1475 (S.D.Tex.1992), *aff'd,* 990 F.2d 1489 (5th Cir.1993), *cert. de-*

*nied,* —— U.S. ——, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994).

■ A nominal party is one who is neither necessary nor indispensable to the action. *Farias v. Bexar County Board of Trustees for Mental Health & Mental Retardation Services,* 925 F.2d 866, 871 (5th Cir.) *cert. denied,* —— U.S. ——, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991). Plaintiffs assert that TMC along with Jeppesen & Co. GmbH and Jeppesen Sanderson, Inc. produced the air navigation approach charts used by the flight crews, and argue that the charts were defective thus causing the crashes.

TMC contends it does not design, produce or sell approach charts such as the ones utilized in the fatal crashes. This is verified by the O. Jean Williams affidavit. Plaintiffs counter by arguing that the alter-ego theory applies and that TMC, Jeppesen & Co., GmbH and Jeppesen Sanderson, Inc are one in the same. Although the relationship between these corporations is that of parent and subsidiary, the evidence shows that they have observed corporate formalities and operate their businesses as separate and distinct entities. There is absolutely no evidence that the activities of TMC have anything to do with the events giving rise to this lawsuit. Based on the above the Court finds that TMC is a nominal party and that it was fraudulently joined. Therefore, this party must be disregarded and the removal upheld.

■ After the Airbus Defendants filed their Notices of Removal a third-party action was filed against Aerospatiale Societe Nationale Industrielle ("Aerospatiale"). It made a special appearance in state court and also filed a Notice of Removal. Contrary to Plaintiffs' beliefs, multiple removals are permitted. *See Albonetti v. GAF Corporation–Chemical Group,* 520 F.Supp. 825, 828 (S.D.Tex.1981).

■ The removal of Aerospatiale was also timely. First, Aerospatiale could not have filed its Notice of Removal before it was sued. *See generally Jones v. Houston Independent School District,* 979 F.2d 1004, 1007 (5th Cir.1992). Second, it is undisputed that Aerospatiale is a French sovereign corporate entity and entitled to immunity. Further-

more, when removal is based on the FSIA, the period for removal can be enlarged. 28 U.S.C. § 1446(d).

Plaintiffs contend the third-party petitions were fraudulent and filed only to create federal jurisdiction where none would otherwise exist. This is absurd. As demonstrated above there is federal jurisdiction over this matter on numerous alternative grounds. Even if Aerospatiale were dismissed this Court would retain jurisdiction over the remaining claims.

### Personal Jurisdiction

■ Now that the Court has determined it has subject matter jurisdiction over this litigation it must now ascertain whether it has personal jurisdiction over the various defendants. It is well established that if a court has no jurisdiction over a defendant, that defendant has an unqualified right to have an order entered granting its motion to dismiss. *Read v. Ulmer,* 308 F.2d 915 (5th Cir.1962). When faced with a motion to dismiss for lack of personal jurisdiction filed pursuant to Rule 12(b)(2), Fed.R.Civ.P., a plaintiff must do more than merely allege that jurisdiction exists. It must carry its burden by establishing facts to show that jurisdiction has been properly invoked. *See e.g., Lacovara v. Merrill, Lynch, Pierce, Fenner and Smith, Inc.,* 551 F.Supp. 601, 602 (E.D.Pa.1982).

■ A test has been established by the United States Supreme Court to determine if a nonresident defendant is subject to a district court's jurisdiction. The court must consider whether the nonresident defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In addition, maintenance of suit in a particular forum must not offend "traditional notions of fair play and substantial justice." *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (citation omitted). This ensures that defendants are not subject to the unreasonable burden of defending themselves in a distant and inconvenient forum. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

■ The initial inquiry must be whether Defendants have purposely established minimum contacts with the State of Texas. Minimum contacts can result in either general or specific jurisdiction. General jurisdiction refers to a suit which does not arise from the nonresident defendant's contacts with the forum, and is asserted only over defendants who maintain continuous and systematic contacts in a particular state. *Hall v. Helicopteros Nacionales De Columbia, S.A.,* 638 S.W.2d 870 (Tex.1982), *rev'd on other grounds,* 466 U.S. 408, 415, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Since the forum state has no direct interest in the litigation a greater level of contacts is required. *Id.*

■ Specific jurisdiction refers to claims which arise out of or relate to a defendant's contacts with the forum. In such cases it is the "relationship among the defendant, the forum, and the litigation" upon which jurisdiction is based. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). In specific jurisdiction cases a single act may be sufficient to support jurisdiction. *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987). A defendant's conduct in connection with the State of Texas must be such that it should reasonably anticipate being haled into a Texas court. *Holt Oil and Gas Corp. v. Harvey,* 801 F.2d 773, 777 (5th Cir.1986) (citations omitted). In addition, the Court must decide if the traditional notions of fair play and substantial justice will be offended if the suit is maintained in Texas. *Shaffer,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579. In determining personal jurisdiction the Court must make its decision based on the totality of the circumstances. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985).

■ After carefully considering the facts and evidence presented, it is clear there is no specific jurisdiction. This litigation does not arise out of any contacts of any defendant with Texas. The lawsuit has been filed by citizens of foreign countries and of other

states. Plaintiffs' contend the crashes were the result of alleged defects in the air navigation approach chart, the ground proximity warning system and the aircraft. The Airbus A300 aircraft in question was not designed, manufactured, assembled or sold in the United States. This is also true of the approach charts used in these flights and the ground proximity the warning systems in question. Plaintiffs have failed to allege any connection between Texas and the production or sale of these particular items.

Since specific jurisdiction does not exist in this case, the Court will only address the issue of general jurisdiction as it relates to each individual defendant.

**Airbus Industrie GIE and Aeroformation**

Although the Court has concluded that Airbus Industrie, G.I.E. ("AI") and Aeroformation ("AeF") qualify as foreign sovereigns it will also address their alternative argument that exercising personal jurisdiction over these entities would violate the due process clause. AI is a French entity whose principal place of business is Blagnac, France. It coordinates and supervises the design, fabrication, assembly, and testing of Airbus model airplanes. It markets and sells aircraft directly to non-North American purchasers.

AeF is a French legal entity which provides operational training to purchasers of Airbus aircraft outside the United States. It was sued only by the Plaintiffs in the crash involving the TAI flight. Although Plaintiffs contend AeF trained and certified the pilots on the flight that crashed, the Pinet declaration shows Aeroformation had absolutely no connection with either the aircraft involved or the certification of the pilots on that particular flight.

 To establish general jurisdiction over AI or AeF their activities in Texas must be regular, systematic, or continuous. *Perkins,* 342 U.S. at 445, 72 S.Ct. at 418. The level of contact in this situation must be substantial. *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1362 (5th Cir.1990). The cases dealing with general jurisdiction emphasize that there is no jurisdiction if the nonresident defendants have no regular place of business, are not licensed to do business in the forum state, and do not have systematic and continuous contacts with the forum state. *See, e.g., Helicopteros Nacionales,* 466 U.S. at 416, 104 S.Ct. at 1872; *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330–31 (9th Cir.1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985); *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242–43 (9th Cir.1984).

These Defendant's rely heavily on *Bearry v. Beech Aircraft Corporation,* 818 F.2d 370 (5th Cir.1987). In that case survivors of parties injured in a plane crash also brought a products liability action against the manufacturer of the plane, Beech Aircraft Corporation ("Beech"). Beech was a Delaware corporation with its principal place of business in Kansas. It had no telephone listing or bank account, nor did it own real estate, pay taxes or permanently assign employees or directors to work in Texas. *Bearry,* 818 F.2d at 372. However, over a five-year period, Beech hired approximately 300 marketing employees in Kansas who were assigned to a nationwide marketing campaign. They sold millions of dollars worth of merchandise to dealers in Texas, one of which was a wholly owned subsidiary of Beech. *Id.* Nevertheless, the Fifth Circuit found that Beech's Texas contacts were not the "continuous and systematic contacts on which general jurisdiction could be based." *Id.* at 375.

 As in *Bearry,* the declarations of von Lachner, Mourey, and Pinet show neither AI nor AeF have regular or continuous and systematic contacts with Texas. Neither are organized under Texas law nor have they been registered to do business in Texas. They have no office, plant or facility of any kind nor real or personal property in Texas. They are not chartered or licensed to do business here and do not have any employees or representatives in Texas. Finally they do not have telephone listings, bank accounts or any physical assets in this state.

 Furthermore, even if there were sufficient contacts in Texas, this Court's exercise of jurisdiction over these Defendants would offend traditional notions of fair play and substantial justice. *International Shoe,*

326 U.S. at 316, 66 S.Ct. at 158. The burden that would be imposed on AI and AeF to defend themselves in Texas would be considerable. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal,* 480 U.S. at 114, 107 S.Ct. at 1033. The burden is of particular significance if, as here, the defendant did little to reach out to the "forum state." *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1272 (9th Cir.1981).

It would be hard for Plaintiffs to dispute the fact that Texas' interest in this lawsuit is slight. None of the events giving rise to this litigation occurred here and the only real tie with Texas is that this is where Plaintiffs' attorneys are located. Where plaintiffs are residents of another state and all the witnesses and evidence are found elsewhere, plaintiffs have no distinct interest in the forum. *Bearry,* 818 F.2d at 377. This dispute would be resolved more efficiently in Europe, Nepal, Thailand or Pakistan where the events took place and the evidence and witnesses are located. *See Brand v. Menlove Dodge,* 796 F.2d 1070 (9th Cir.1986). In addition any of these forums would have a much stronger interest in this lawsuit. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi,* 480 U.S. at 115, 107 S.Ct. at 1034 (citation omitted). After careful consideration, the Court concludes that it lacks personal jurisdiction over both AI and AeF.

**Jeppesen & Co., GmbH and Jeppesen Sanderson, Inc.**

 Like AI and AeF, the Jeppesen Defendants rely primarily on *Bearry.* Jeppesen & Co's contacts with Texas were much less significant than those of Beech. Jeppesen & Co., GmbH is a German corporation. It has no office, telephone listing, real or personal property, bank account or employees in Texas. Its employees do not come here on business, it does not pay taxes in Texas and it does not advertise its services or products in this state. Unlike Beech it does not have a subsidiary in Texas and its services can only be used in Europe, Africa, the North Atlantic, and Asia.

Jeppesen Sanderson, Inc. is a Delaware corporation with its principal place of business in Colorado. It is not registered to do business in Texas. Plaintiffs contend it acted in concert with Jeppesen & Co., GmbH and the Times Mirror in the production and selling of the approach chart used by the flight crew during the flight of the Pakistani airliner. Plaintiffs argue that an alleged defect in the chart caused the crash. The affidavit of William H. Barlow states that Jeppesen Sanderson has no telephone listing, real or personal property, office, bank account, employees, officers, or directors in Texas. It does not pay taxes in Texas nor does it have a subsidiary here. Jeppesen Sanderson does advertise nationally, but these advertisements are not specifically targeted to the Texas market.

Both Jeppesen Co. GmbH and Jeppesen Sanderson are owned by the Times Mirror. Plaintiffs believe Jeppesen Sanderson and Jeppesen & Co., GmbH are engaged in a joint venture or are the alter-egos of one another and that they jointly publish a record of changes in their charts. These arguments are supported by four unverified exhibits which Plaintiffs refer to as "public records." These do not constitute appropriate evidence and consist of inadmissible hearsay under Fed.R.Evid. Rule 802. Even if this evidence was considered, it shows the fallacy of Plaintiffs' contentions. The documents relate primarily to the Times Mirror which does not design, produce or sell aeronautical charts. The sales figure does not reflect aeronautical chart revenue, but rather that of the Times Mirror which is a separate entity. Plaintiffs have failed to produce any evidence of sales in Texas by either Jeppesen & Co., GmbH or Jeppesen Sanderson. The allegation that these entities are the alter-egos of one another or that Jeppesen & Co., GmbH is a wholly owned subsidiary of Jeppesen Sanderson is controverted by the Barlow affidavit. Plaintiffs have failed to present any evidence to support its "jurisdiction facts."

■ Plaintiffs also argue that the Times Mirror, Jeppesen Sanderson and Jeppesen Co., GmbH placed "a product in the stream of commerce for distribution to all states." The stream-of-commerce theory relates to specific rather than general jurisdiction, and applies only when the injury occurs in the forum state. *See World–Wide*, 444 U.S. at 297, 100 S.Ct. at 567; *Irving v. Owens–Corning Fiberglas Corporation*, 864 F.2d 383, 388 (5th Cir.), *cert. denied*, 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989); *Bearry*, 818 F.2d at 375.

To establish general jurisdiction Plaintiff must show that the defendant continuously and systematically conducted business activities in the forum. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952). Plaintiffs have not made any specific allegations that these Defendants have conducted continuous and systematic business activities in this state. There are a few allegations directed at the Times Mirror, but since this Court has dismissed it as a nominal party these assertions need not be addressed. Intercorporate relationships are irrelevant.

■ The Court finds that it would be unfair and unreasonable to exercise personal jurisdiction over either Jeppesen & Co., GmbH or Jeppesen Sanderson. Texas has no interest in Plaintiffs' claims against these Defendants and the due process clause limits the ability of states to decide a case in which they lack a legitimate interest. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). An obscure interest in the dispute is inadequate. *See World–Wide*, 444 U.S. at 299, 100 S.Ct. at 568; *Bearry*, 818 F.2d at 377. There is simply no reason to litigate the dispute against these Defendants in Texas.

### Sundstrand Corporation

■ Sundstrand Corporation ("Sundstrand") is a Delaware corporation with its principal place of business in Illinois. Plaintiffs have accused it of manufacturing and distributing a defective Ground Proximity Warning system ("GWPS").

Sundstrand contends this Court lacks personal jurisdiction over it because its contacts with Texas are not continuous and systematic. Like the Jeppesen Defendants, AI and AeF, Sundstrand's argument is based predominately on *Bearry*. There is no evidence that Sundstrand has a manufacturing facility, warehouse or office in Texas, or that any of its employees are located here. It does not have any real or personal property or bank accounts in Texas. Like Beech, Sundstrand sells under contract terms, FOB Point of Origin, which means there are no sales in Texas. However, Sundstrand's position differs from Beech's because Sundstrand does have an agent for service of process and is registered to do business in Texas. However, these facts are of little importance in a jurisdictional analysis. *Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) *cert. denied*, —— U.S. ——, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993).

While Sundstrand has a presence in Texas, the affidavit of Gary Hedges shows it does not regularly conduct business in this state. Where a corporation "exercise[s] its right to structure its affairs in a manner calculated to shield it from the general jurisdiction of the courts of other states," it will not be subject to jurisdiction in those forums. *Bearry*, 818 F.2d at 375–76.

Plaintiffs' fundamental jurisdictional argument is that as a leading supplier of proprietary aerospace systems and components, it must have products on virtually every commercial, military, commuter and business aircraft produced in the world. They submit documents showing the amount of Sundstrand's total yearly sales. On this evidence alone, they infer that Sundstrand must have actively distributed its product in Texas. This argument falls under the stream-of-commerce theory. As explained above, this theory is inapplicable when making a general jurisdiction analysis.

Second, Plaintiffs contend that a district office of Sundstrand, doing business as Sundstrand Aerospace, is located in Arlington, Texas. This allegation is supported only with inadmissible hearsay evidence. According to the declaration of Gary Hedges, this is in fact an office of Sundstrand Service Cor-

poration, a wholly owned subsidiary of Sundstrand. The evidence shows that Sundstrand has no office or employees in Texas. Accordingly, the Court finds that the claims against Sundstrand should be dismissed for lack of personal jurisdiction.

*Failure to Join an Indispensable Party*

■ As an alternative ground for dismissal Defendants make a strong argument that this case should be dismissed for failure to join indispensable parties pursuant to Fed. R.Civ.P. 19(b). Defendants contend that both PIA and TAI, owners of the planes that crashed, should have been named as Defendants. Pursuant to Rule 19, Fed.R.Civ.P. a party is indispensable if complete relief cannot be accorded to the present parties "in equity and good conscience" without their presence in the lawsuit. *Id.*

A Rule 19 analysis is controlled by practical and objective considerations. *Lone Star Industries, Inc. v. Redwine,* 757 F.2d 1544, 1552 (5th Cir.1985). PIA and TAI owned and operated the aircraft in question and had a duty to maintain, inspect and keep the planes in good working order. The pilots were employees of PIA and TAI and according to the declaration of von Lachner, pilot error was the proximate cause of both crashes.

In *Whyham v. Piper Aircraft Corp.,* 96 F.R.D. 557, 560–61 (M.D.Pa.1982), the Court considered a similar fact scenario and concluded that the owners of the aircraft were necessary parties. However, joinder was not possible due to a lack of personal jurisdiction. The Court then applied the Rule 19(b) analysis to decide whether in equity or good conscience the action should continue or be dismissed. It found that the manufacturer, as well as the owners, all risked being prejudiced by the action proceeding without the joinder of the airlines, and that there was no way to "adequately protect them from the prejudice such a judgment could generate." *Id.* at 562. The Court further found that "one dispositive action ... [would] eliminate multiple suits concerning liability and ... serve judicial economy." *Id.* Finally, the court reached the conclusion that the plaintiff would have an adequate remedy in Scotland.

"Although Plaintiff may not be able to rely on a strict liability theory, and although [his] potential damage award may be smaller, there is no danger that [he] will be deprived of any remedy or treated 'unfairly.'" *Id.* (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

Like Piper, Defendants argue that the sole cause of the crashes was negligence by the owners and operators. If PIA and TAI are not parties to this litigation, Defendants risk being prejudiced and possibly forced to pursue a second action against PIA and TAI for indemnity or contribution. The liability issue may also be decided inconsistently. Because the Court believes PIA and TAI are indispensable parties, this case must be dismissed and adjudicated in a forum that will eliminate multiple suits and serve judicial economy.

*Forum non conveniens*

■ Defendants final alternative argument for dismissal is based upon the doctrine of *forum non conveniens.* The purpose of this doctrine is to ensure that the location of the trial is convenient for both the litigants and the Court. As a result a Court can refuse to exert its jurisdiction when the convenience of the parties and the court and the interests of justice indicate an alternative forum would be more beneficial.

■ The Supreme Court has established a two-step process that a district court must follow when evaluating a motion filed pursuant to this doctrine. *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). First, the Court must find an adequate alternative forum in which to try the case. *Id.* If one exists, it must then consider various private and public interest factors in determining the appropriateness of a *forum non conveniens* dismissal. *Id.*

To satisfy the first prong, Defendants must be "amenable to process" in another jurisdiction. *Id.* at 508, 67 S.Ct. at 843. It is not necessary that this alternative forum provide all the remedies and benefits that may be available in an American court, so long as they do not amount to no remedy at all.

*Piper Aircraft,* 454 U.S. at 254, 102 S.Ct. at 265. The Airbus Defendants argue that the case should be tried in France and that French product liability law is more strict toward manufacturers than American product liability law. *See* Butterworths, European Product Liability, at 103–122 (1992). Several other alternative forums also exist. The most logical would be Nepal, where the crash occurred. Pakistan, Thailand, Germany, Great Britain, the Netherlands and Spain are also possible forums. All have a closer connection with this case than the United States.

Both the private and public interest factors weigh in favor of dismissal. All of the evidence in this suit, including witnesses, are in countries and states other than Texas. The airplanes were designed and manufactured in France. Most of the witnesses reside in France, Thailand, Pakistan, Germany or Nepal. Texas is clearly not a convenient forum for these fact witnesses. In addition, these crucial witnesses are outside this Court's subpoena power and the costs for willing witnesses to attend the trial would be astronomical.

Furthermore, this is not a local controversy. None of the passengers on either flight were Texas residents. "[A] community having no relation to the litigation," should not be forced to bear "the burden of jury duty" in a case with no connection with Texas. *Gahr Developments of Panama, Inc. v. Nedlloyd Lijnen, B.V.,* 723 F.2d 1190, 1192 (5th Cir.1984) (citations omitted). A burden would also be placed on the Court's docket which would frustrate local litigants who wish to have their cases heard. *Id.*

In addition, since the crash occurred in Nepal, the flights originated in Thailand or Pakistan, the aircraft was designed, assembled, and sold in France, and operated by pilots trained outside the United States, a Texas conflict of laws analysis would then yield to the application of French law or the law of another country. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984). Any deference to Plaintiffs' choice of forum is eliminated when one examines the obvious unjustified burden that would be imposed on the judicial system of this state. *See Villar*

*v. Crowley Maritime Corp.,* 780 F.Supp. at 1485. Accordingly, it is

ORDERED that Plaintiffs' motion to remand (entry 10) is DENIED. It is further

ORDERED that Defendant Jeppesen & Co. GMBH's motion to dismiss (entry 16) is GRANTED. It is further

ORDERED that Defendant Jeppesen Sanderson, Inc.'s motion to dismiss (entry 18) is GRANTED. It is further

ORDERED that the motion to dismiss of The Times Mirror Co. (entry 20) is GRANTED. It is further

ORDERED that Defendant Sundstrand Corp.'s motion to dismiss (entry 27) is GRANTED. It is further

ORDERED that the Airbus Defendants' motions to dismiss (entries 29 & 35) are GRANTED. It is further

ORDERED that the Airbus Defendants' motions for more definite statement (entries 29 & 35) are DENIED. It is further

ORDERED that the Airbus Defendants' motion for summary judgment is DENIED as these parties have been dismissed. It is further

ORDERED that Plaintiffs' motion to strike Aerospatiale's removal notice and to remand (entry 38) is DENIED. It is further

ORDERED that Plaintiff's motion to dismiss the third party petition of the Airbus Defendants (entry 38) is DENIED.

Plaintiffs may file this litigation in a more convenient forum. Any motion filed in any one of the consolidated cases is considered to have been filed in all of the cases, if applicable.