Jane DOE, Plaintiff,

v.

Haji Jefri BOLKIAH, Awang Bin (Alex) Kassim, Mr. Bal, David Doe, Elizabeth, Helen Shogi, Kaliber Talent Consultants, Inc., Kaliber Talent Corp., Kellogg & Andelson, a California accountancy corporation, ADR Productions, Inc., Doe Defendants 1–100, Defendants.

Jane Roe, Plaintiff,

v.

Haji Jefri Bolkiah, Awang Bin (Alex) Kassim, Mr. Bal, David Doe, Elizabeth, Helen Shogi, Kaliber Talent Consultants, Inc., Kaliber Talent Corp., Kellogg & Andelson, a California accountancy corporation, ADR Productions, Inc., Doe Defendants 1–100, Defendants.

Civ. Nos. 97–01198 ACK, 97–01361 ACK.

United States District Court,
D. Hawaii.

Jan. 5, 1998.

J. Ryan Dwyer, III, Dwyer Imanaka Schraff Kudo Meyer & Fujimoto, Honolulu, HI, for Jane Doe.

Edmund K. Saffery, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for Haji Jefri Bolkiah.

Carrie K. Okinaga, McCorriston Miho Miller & Mukai, Honolulu, HI, for Elizabeth Khan, Kaliber Talent Consultants.

Alika L. Piper, Gelber Gelber Ingesoll & Klevansky, Honolulu, HI, for ADR Productions, Inc.

### ORDER GRANTING PLAINTIFFS DOE AND ROE'S MOTIONS FOR REMAND AND DENYING PLAINTIFFS' MOTIONS FOR COSTS AND FEES

KAY, Chief Judge.

### BACKGROUND

These two lawsuits stem from incidents that arose from the alleged "harem" of the Sultan of Brunei ("Sultan"). The Sultan is widely known as the wealthiest man in the world. Plaintiffs Jane Doe and Jane Roe bring separate suits alleging a number of causes of action against, among others, the Sultan's brother Haji Jefri Bolkiah ("Jefri"), the Kaliber Talent Consulting Corporation ("Kaliber"), and ADR Productions, Inc. ("ADR"). According to Plaintiffs, Jefri and his alleged agents used Kaliber to recruit beautiful young women through the ADR agency and other agencies to become a part of the harem in Brunei. Approximately 30 to 100 women would be in attendance at the Sultan's palace at one time. Some of the women understood that they were recruited to perform sex acts, while others, such as Plaintiffs, purportedly believed that they were hired to perform legitimate promotional and spokesmodel work. Some notable women who were recruited along with Plaintiffs include former Miss America Shannon Marketic ("Marketic")[1] and the current Miss U.S.A.,

---

1. Marketic has already brought a suit arising out of the same or similar facts against Jefri and others before Judge Consuelo B. Marshall in the Central District of California. On September 15, 1997, Judge Marshall issued an order finding that Jefri is a "foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA") ("Judge Marshall Order"). *See* Judge Marshall Order, attached to Jefri's Oppositions as Ex. 3, at 2–3. Judge Marshall could not determine, however, whether Jefri's alleged acts fit into the "commercial activity" exception of 28 U.S.C. §§ 1603(d)–(e) & 1605(a)(2). *Id.* at 3. Accordingly, Judge Marshall allowed Marketic to conduct limited discovery on the "commercial activity" issue. *Id.*

Brandi Sherwood. These women signed "talent" contracts which stated that they would stay at the palace for a minimum of six weeks, at a salary of approximately $3,000. per day.

Upon their arrival at the palace, Plaintiffs were allegedly forced to provide blood samples (presumably to screen for AIDS and venereal diseases) and assigned "roommates" who were other recruits. The women were provided with opulent, yet restrictive accommodations. Palace staff told Plaintiffs to attend nightly parties and functions at discotheques where the Sultan, Jefri, and their male friends would allegedly select which women they would have sexual intercourse with.

Plaintiff Roe informed Defendant Alex Kassim ("Alex"), Jefri's personal secretary, that she did not want to have intercourse with any of the men. The next day, Defendant Mr. Bal told Roe that she would be flown home. Roe was flown home, paid a sum less than the minimum due to her under her written contract, and warned not to disclose her experience in Brunei to anyone.

Plaintiff Doe alleges that she also stated her refusal to perform sex acts for any of the men. Alex allegedly told her to calm down and that "Kaliber knew" the true purpose of the trip was one for prostitution. Doe alleges that agents of the palace refused to allow her to depart. Doe arranged for her fiance to send a communication from Hawaii indicating that a fictitious "Uncle Ryan" had been injured and her presence in the United States was required. Alex allegedly continued to refuse Doe's request to leave. Doe alleges that "David," a member of the Sultan's circle of friends who was privy to the harem, stated that he could arrange for her departure in exchange for sex. David allegedly physically assaulted Doe and she was returned home the following day. Like Roe, Doe was paid a sum below her contracted amount and warned not to disclose her experience in Brunei.

Plaintiffs originally filed their complaints in state court. On September 11, 1997, Jefri removed Doe's case solely pursuant to 28 U.S.C. § 1441(d), which allows removal of cases brought against a "foreign state." 28 U.S.C. § 1441(d). Jefri removed Roe's case on the same ground on September 19, 1997. On September 26, 1997, Jefri filed separate motions to dismiss Doe and Roe's complaints. On November 5, 1997, both Doe and Roe filed motions to remand their cases for lack of subject matter jurisdiction and for costs and fees incurred as a result of removal. On November 14, 1997 Defendant ADR filed a crossclaim against Jefri and the other Defendants in both cases. On the same day, ADR also brought counterclaims against Doe and Roe in their respective cases. On November 20, 1997, ADR filed oppositions to Jefri's motions to dismiss Doe and Roe's complaints and "statements" regarding Plaintiffs' motions to remand. On the same day, Jefri filed oppositions to Plaintiffs' motions, and Plaintiffs filed oppositions to Jefri's motions. On December 1, 1997, the parties, with the exception of ADR, filed their reply memoranda. Plaintiffs' counsel filed affidavits on December 1, 1997, requesting permission to depose Jefri in Hawaii pursuant to F.R.C.P. 56(f) or to strike his filed affidavit.

On December 2, 1997, ADR filed motions to strike certain exhibits filed by Jefri and Plaintiffs and *ex parte* motions to have their motions to strike heard at the December 8, 1997 hearing. The Court granted Plaintiffs' *ex parte* motion on December 3, 1997. On December 8, 1997, the Court held a hearing for the aforementioned motions.

## DISCUSSION

### I. *ADR's Motions To Strike Certain Exhibits*

ADR seeks to strike Judge Marshall's unpublished order in the *Marketic* case submitted by Jefri and the written newspaper articles and television reports submitted by Plaintiffs.

### A. Judge Marshall Order

ADR contends that Judge Marshall's Order should be stricken because it is unpublished, ADR was not a party to the case, and the parties in *Marketic* did not dispute the "foreign state" issue. The Court finds ADR's reasons without merit. The Court finds Judge Marshall's Order not prejudicial to ADR and declines to strike it.

### B. Plaintiffs' News and Media Exhibits

Similarly, the Court declines to strike Plaintiffs' news and media exhibits. ADR contends that the materials should be stricken because they contain hearsay statements. The Court understands that Plaintiffs have submitted such materials as background information and not as proof of the facts asserted therein. Accordingly, the Court declines to strike the materials. However, the Court will not consider such materials for purposes of the subject motions to remand.

### II. Plaintiffs' Motions To Remand

■ A "foreign state" under the FSIA has an absolute right to removal to federal court. *Kern v. Jeppesen Sanderson, Inc.*, 867 F.Supp. 525 (S.D.Tex.1994). Plaintiffs move to remand based on the argument that Jefri has failed to meet his burden that he is a "foreign state" under 28 U.S.C. § 1441(d) and that the acts underlying their claims were personal and private in nature. Jefri counters that he is a "foreign state" and has plead sufficient facts to make out a prima facie case for subject matter jurisdiction.

### A. Judge Marshall's Order

The Court first addresses Jefri's argument that the Court should follow Judge Marshall's Order, which found that he was a "foreign state." The Court declines to do so. The unpublished Order is not binding on this Court. Moreover, the Order itself provides no analysis on the "foreign state" issue and conclusorily states that "Prince Jefri is a 'foreign state' within the meaning of the Foreign Sovereign Immu-nities Act, 28 U.S.C. § 1603." Judge Marshall Order, attached to Jefri's Oppositions as Ex. 3, at 2–3. As Plaintiffs and ADR point out, it appears that the "foreign state" issue was neither disputed by the parties nor analyzed by Judge Marshall. *See* Marketic's Opposition, attached to Jefri's Oppositions as Ex. 2, at 14. The Court will therefore conduct its own analysis of this issue.

### B. Timeliness of Plaintiffs' Motions For Remand

Jefri also contends that Plaintiffs' concede the "foreign state" issue because they failed to file their remand motions within 30 days. Under 28 U.S.C. Section 1447(c), however, parties may move for remand based on a lack of subject matter jurisdiction "at any time before final judgment." Plaintiffs have clearly moved for removal on a lack of subject matter jurisdiction regarding the "foreign state" issue. *See Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 304 (9th Cir.1997) (noting that the "existence of *subject matter jurisdiction* under the FSIA is a question of law reviewed de novo") (emphasis added). Accordingly, Jefri's argument must fail.

Jefri nevertheless contends that Plaintiffs have conceded that he acted within the scope of his authority because they failed to object to the removal within thirty days. Jefri's Opposition to Doe Motion, at 6–7 (citing *Haines v. National Union Fire Ins. Co.*, 812 F.Supp. 93 (S.D.Tex.1993) and *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir.1993)). The Court finds this argument without merit. Again, Plaintiffs object to the removal by arguing lack of subject matter jurisdiction, not some other grounds such as diversity, which must be asserted within the thirty-day window. *See, e.g., Haines*, 812 F.Supp. at 95 (noting that "Haines' contention that removal is precluded by 28 U.S.C. § 1445(c) relates to the removability of the underlying proceeding, *not to subject matter jurisdiction*, and cannot now be raised") (emphasis added); *see also Shaw*, 994 F.2d at 366 (analyzing appropriateness of removal where

$50,000.00 amount in controversy for *diversity jurisdiction* disputed). Consequently, *Haines* and *Shaw* are inapposite and Jefri's argument that Plaintiffs conceded that he acted within the scope of his authority must fail.

## C. Whether Jefri Is a "Foreign State"

The pivotal issue is whether Jefri has shown that he is a "foreign state" such that removal was proper. 28 U.S.C. Sections 1330(a) and (b) state:

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

(b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

28 U.S.C. § 1603(a) provides that the definition of a "foreign state" includes "an agency or instrumentality of a foreign state," which is any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States ... nor created under the laws of any third country.

28 U.S.C. § 1603(b).

■ To establish a prima facie case of immunity under the FSIA, the burden rests upon Jefri to show that he was a "foreign state." *Phaneuf,* 106 F.3d at 305–306. In the Ninth Circuit, " 'an agency or instrumentality of a foreign state' for purposes of the FSIA includes individuals acting in their official capacity." *In re*

*Estate of Ferdinand E. Marcos Human Rights Litigation: Trajano v. Marcos,* 978 F.2d 493, 496–497 (9th Cir.1992) ("*Trajano* "). The FSIA applies to a foreign official acting in an official capacity, but does not apply to an official acting beyond the scope of his or her authority. *Id.; Chuidian v. Philippine Nat'l Bank,* 912 F.2d 1095, 1106 (9th Cir.1990) ("Sovereign immunity ... will not shield an official who acts beyond the scope of his authority"). Acting beyond the scope of official authority has been defined to "include anything the sovereign has not empowered the official to do." *Phaneuf,* 106 F.3d at 306. From *Chuidian, Trajano,* and *Phaneuf,* it appears that a foreign official acting beyond the scope of his or her authority cannot qualify as a "foreign state" for potential immunity under the FSIA. *Chuidian,* 912 F.2d at 1106; *Trajano,* 978 F.2d at 496–497; *Phaneuf,* 106 F.3d at 306; *see also Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1028 (D.C.Cir.1997) (finding that a sultan was not a "foreign state" because his promises of compensation to plaintiffs were not in furtherance of the interests of the sovereign, but in furtherance of personal interests). Once a foreign official establishes a prima facie case of immunity, the burden of production shifts to the plaintiff to offer evidence that an exception to the FSIA such as the commercial activity exception applies. *Id.* at 307.

■ In the instant case, Jefri states that he is a "foreign state" because (1) Brunei is an absolute monarchy, (2) he is a member of the Royal family, (3) during the relevant time period, he was the Chairman of the Brunei Investment Agency, (4) he was a member of the privy counsel of Government of Brunei, (5) he served as Minister of Finance of Brunei. Notwithstanding Jefri's contentions, Plaintiffs have alleged that Jefri acted outside the scope of official authority by recruiting numerous women (via his agents) to the palace to perform unlawful acts of prostitution.

In any event, Jefri has not established a prima facie case. Plaintiffs have provided

numerous declarations and exhibits corroborating their position. The overwhelming import of the evidence suggests that Jefri and others have been engaging in the illicit acts alleged by Plaintiffs. The aforementioned acts by Jefri and his agents would fall outside the scope of any of his official duties as the Chairman of the Brunei Investment Agency, a member of the privy counsel of Government of Brunei, the Minister of Finance of Brunei, or a member of the Royal family. *See Xuncax v. Gramajo*, 886 F.Supp. 162 (D.Mass.1995) (citing Ninth Circuit precedent and finding that Guatemalan official was not entitled to FSIA immunity where acts of detention and torture, which formed the basis of plaintiffs' claims, exceeded anything that might be considered to have been lawfully within the scope of his official authority); *Jungquist*, 115 F.3d at 1028. Additionally, Jefri has neither shown nor argued that the Government of Brunei empowered him to run the alleged prostitution ring or harem under any circumstances. *Id.; Phaneuf*, 106 F.3d at 306. This is not the case in which a plaintiff has failed to come forth with any evidence showing that the alleged official was acting outside the scope of official authority. *Cf. Kline v. Kaneko*, 685 F.Supp. 386, 390 (S.D.N.Y.1988). The Court finds that Plaintiffs have provided sufficient evidence to show that Jefri (and his agents) acted outside the scope of any of his official duties. *Phaneuf*, 106 F.3d at 306; *Xuncax*, 886 F.Supp. at 162; *Jungquist*, 115 F.3d at 1028.

Jefri contends that "as a member of the ruling family of Brunei, Prince Jefri cannot be charged with acting outside his lawful authority." Jefri Opposition to Doe Motion, at 14. The Court disagrees. Jefri cites no authority for this proposition and the Court cannot envision how Jefri's mere membership in the ruling family of Brunei could exempt him from the rules of immunity under Ninth Circuit precedent and the FSIA. *See Jungquist*, 115 F.3d at 1028; and *Xuncax*, 886 F.Supp. at 162.

For the foregoing reasons, the Court finds that Jefri has not met his burden to establish a prima facie case that he is an agent or instrumentality of a "foreign state" acting within the scope of his authority. *Phaneuf*, 106 F.3d at 305–306; *Chuidian*, 912 F.2d at 1103–1106. Accordingly, the Court will grant Plaintiffs' motion to remand for lack of subject matter jurisdiction.[2] In light of the Court's ruling, it need not address Defendants' motion to dismiss or the parties' various other motions.

D. *Plaintiffs' Motions For Fees and Costs*

■■■ When granting a motion for remand, this Court may order a defendant to pay plaintiff's costs and fees incurred as a result of the removal. 28 U.S.C. § 1447(c). District courts have wide discretion to award attorneys fees and costs, and such awards are reviewed under the abuse of discretion standard. *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 447 (9th Cir.1992). Although a showing that removal was frivolous or vexatious is not required, courts generally determine

---

2. *Diversity of Citizenship*
    The Court notes that in the absence of jurisdiction based upon Jefri's "foreign state" status, jurisdiction cannot be premised upon diversity of citizenship. 28 U.S.C. Section 1332(a)(2) provides for jurisdiction over suits between "citizens of a State and citizens or subjects of a foreign state" (i.e. aliens). The rule of complete diversity requires that all plaintiffs be of different citizenship than all defendants. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). In the instant case, Plaintiffs are both Hawaii residents. While Defendants Jefri and his alleged agents are aliens, ADR is a Hawaii corporation, which defeats complete diversity. *Id.* Consequently, there is no diversity of citizenship jurisdiction in this case. The Court also notes that it has no jurisdiction pursuant to the Alien Tort Act, 28 U.S.C. § 1350 (conferring jurisdiction to federal district courts for actions *brought by aliens* against a foreign state or individual for a tort in violation of the law of nations or a treaty of the United States). Since the parties have not suggested any other means for jurisdiction, remand is proper.

whether removal was tenuous or not colorable in order to award fees and costs. *See generally, Samura v. Kaiser Foundation Health Plan, Inc.,* 715 F.Supp. 970 (N.D.Cal.1989); *Moore,* 981 F.2d at 446–447.

In the instant case, the Court finds that there appeared to be a reasonable basis for Jefri's removal of Plaintiffs' cases. *Id.* Whether Jefri was a "foreign state" was a somewhat close question and removal was not vexatious or unduly tenuous. Accordingly, the Court denies Plaintiffs' motions for costs and fees.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for remand and DENIES Plaintiffs' motions for costs and fees.

IT IS SO ORDERED.