**MARATHON OIL COMPANY; Marathon International Oil Company; Marathon Petroleum Norge A/S, Plaintiffs–Appellants Cross–Appellees,**

v.

**RUHRGAS, A.G., Defendant–Appellee Cross–Appellant.**

No. 96–20361.

United States Court of Appeals, Fifth Circuit.

June 10, 1997.

Clifton T. Hutchinson, Dallas, TX, J. Gregory Taylor, David John Schenck, Hughes & Luce, Dallas, TX, for Plaintiffs–Appellants–Cross–Appellees.

Ben H. Sheppard, Jr., Guy Stanford Lipe, Michael John Mucchetti, Harry M. Reasoner, Vinson & Elkins, Houston, TX, for Ruhrgas.

Peter Heidenberger, Thomas G. Corcoran, Jr., Berliner, Corcoran & Rowe, Washington, DC, for Federal Republic of Germany, Amicus Curiae.

Before POLITZ, Chief Judge, and WIENER and STEWART, Circuit Judges.

POLITZ, Chief Judge:

This international commercial dispute involves allegations of fraud, civil conspiracy, and various business torts. Concluding that the district court lacked subject matter jurisdiction, we vacate and remand with instructions.

## Background

In 1976 Marathon Oil Company (MOC) became involved in North Sea gas exploration activities when its affiliate, Marathon International Oil (MIO), purchased a European concern holding a North Sea production license.[1] The production license, originally held by Marathon Petroleum Norge (Norge), ultimately gave another affiliate, Marathon Petroleum Norway (MPN), rights to 24% of a gas field in the North Sea known as the Heimdal field.[2] Another large interest holder in the Heimdal field was Statoil, Norway's state-owned gas company, which had purchased a 40% interest in 1975.

The present litigation arises from alleged oral and written agreements between the Marathon companies, Ruhrgas, A.G., and other European companies regarding the development and production of Heimdal field reserves. Ruhrgas is Germany's primary gas company. According to the Marathon plaintiffs, Ruhrgas, Statoil, and a consortium of other European companies secretly conspired to monopolize the western European gas market by funneling a large portion of North Sea gas reserves through Ruhrgas's production facilities in Germany.

The plaintiffs allege that to effectuate this plan Ruhrgas duped them into providing MPN with $300 million to participate in extensive construction and drilling operations with the false promises of premium prices for MPN's European gas sales and guaranteed pipeline transportation tariffs to help offset the substantial construction investment.[3]

When it ultimately became apparent that premium prices would not be honored and the scheduled transportation tariffs would not materialize, MOC, MIO, and Norge[4] sued Ruhrgas in Texas state court for fraud, misrepresentation, civil conspiracy, and tortious interference with business relations. Ruhrgas timely removed, invoking jurisdiction under diversity of citizenship, federal question, and 9 U.S.C. § 205. After removal, Ruhrgas moved for a stay pending arbitration in Europe which the district court denied. Ruhrgas then filed a motion to dismiss for lack of personal jurisdiction and a motion to dismiss for *forum non conveniens*. The Marathon plaintiffs moved to remand for lack of subject matter jurisdiction. The district court granted Ruhrgas's motion to dismiss for lack of personal jurisdiction and dismissed all other motions as moot. The court then denied Ruhrgas's motion for reconsideration in which Ruhrgas reurged the court to abate all proceedings pending compelled arbitration in Europe. All parties timely appealed.

## Analysis

We address at the threshold the vital question of federal subject matter jurisdiction. As courts of limited jurisdiction, federal courts may adjudicate a case or controversy only if there is both constitutional and statutory authority for federal jurisdiction.[5] Ruhrgas insists that we must rule on

---

1. MIO acquired Pan Ocean and its subsidiary, Pan Ocean Norge, which held the North Sea production license. Pan Ocean was later renamed Marathon Petroleum Norway, and Pan Ocean Norge became Marathon Petroleum Norge.

2. MPN acquired the production license by virtue of a Pass Through Agreement with its subsidiary, Marathon Petroleum Norge, the original license holder.

3. This proposal was known as the "Heimdal Gas Agreement," which allegedly guaranteed a $5.50 per million BTU price. MPN, as assignee of Norge's Heimdal license, was a party to this agreement.

4. As a signatory to the Heimdal Gas Agreement, MPN's claims were subject to binding arbitration in Europe. Norge, however, was not a signatory and asserts that although it assigned its Heimdal license to MPN, it nonetheless has standing to sue for the alleged devaluation of the license. We address that contention *infra*.

5. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545 (Former 5th Cir.1981); Erwin Chemerinsky, *Federal Jurisdiction* 217 (1989); *see also Sheldon v. Sill*, 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850) (Congress may create lower federal courts and thus has the power to vest them with less than full Article III jurisdiction).

its personal jurisdiction challenge without first determining whether we have jurisdiction *ratione materiae*. We are cognizant that in some instances we have permitted the dismissal of an action for lack of personal jurisdiction without considering the question of subject matter jurisdiction.[6]

We decline, however, to extend those cases into mandatory rules of trial and appellate procedure governing the order in which jurisdictional motions must be determined. No dispositive precedent of our circuit has held that a court *must* ignore a lack of subject matter jurisdiction when it has before it an easier disposition of a motion to dismiss for lack of personal jurisdiction. Such a rule necessarily would be invalid in light of our constitutional and statutory authority and the overwhelming body of precedent commanding all federal courts to scrutinize assiduously subject matter jurisdiction at each stage of litigation, trial and appellate, and to dismiss cases not properly before us.[7]

■ We must be ever mindful that any rule or decision allowing a federal court to act without subject matter jurisdiction conflicts irreconcilably with basic principles of federal court authority.[8] On several occasions we have sounded the caution that "[w]here a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal tribunal poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect."[9] If dismissals for lack of personal jurisdiction were judgments on the merits, decisions allowing that determination in the absence of federal subject matter jurisdiction would have no validity.[10] The appropriate course is to examine for subject matter jurisdiction constantly and, if it is found lacking, to remand to state court if appropriate, or otherwise dismiss.[11] Such a course respects the proper balance of federalism. We must, therefore, reject Ruhrgas's invitation to ignore the formidable subject matter jurisdiction issue presented herein and resolve that fundamental issue.

■ Given the limited nature of federal jurisdiction, there is a strong presumption

---

**6.** *See, e.g., Villar v. Crowley Maritime Corp.*, 990 F.2d 1489 (5th Cir.1993); *Asociacion Nacional de Pescadores v. Dow Quimica*, 988 F.2d 559 (5th Cir.1993); *Walker v. Savell*, 335 F.2d 536 (5th Cir.1964).

**7.** *See, e.g., Cutler v. Rae*, 48 U.S. (7 How.) 729, 12 L.Ed. 890 (1849); *Mansfield v. Swan*, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Mitchell v. Maurer*, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934); *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100 (5th Cir. 1981); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295 (5th Cir.1985); *Mocklin v. Orleans Levee Dist.*, 877 F.2d 427 (5th Cir.1989); *Trizec Properties, Inc. v. United States Mineral Prods. Co.*, 974 F.2d 602 (5th Cir.1992); *Moore v. United States Dept. of Agriculture ex rel. Farmers Home Admin.*, 55 F.3d 991 (5th Cir.1995).

**8.** *See, e.g., Kokkonen*, 511 U.S. at 377, 114 S.Ct. at 1675 (holding that the jurisdiction of the federal courts "is not to be expanded by judicial decree") (citing *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951)).

**9.** *B, Inc.* 663 F.2d at 548; *see also Stafford v. Mobil Oil Corp.*, 945 F.2d 803 (5th Cir.1991); *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254 (5th Cir.1988); *In re Majestic Energy Corp.*, 835 F.2d 87 (5th Cir.1988); *In re Carter*, 618 F.2d 1093 (5th Cir.1980).

**10.** *See Caterpillar, Inc. v. Lewis*, — U.S. —, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (holding that a district court must have subject matter jurisdiction by the time it renders judgment for the judgment to be valid); *see also Weeks v. Fidelity & Cas. Co.*, 218 F.2d 503, 504 (5th Cir. 1955) ("If the refusal to remand was erroneous, the judgment of dismissal was likewise erroneous.") (citing *Ruff v. Gay*, 67 F.2d 684 (5th Cir. 1933), *aff'd*, 292 U.S. 25, 54 S.Ct. 608, 78 L.Ed. 1099 (1934)).

**11.** Confronted with virtually identical facts, in *Ziegler v. Champion Mortgage Co.*, 913 F.2d 228 (5th Cir.1990), we raised the subject matter jurisdiction question *sua sponte* and vacated the judgment of dismissal which was based on a lack of personal jurisdiction.

against same,[12] and "the burden of establishing the contrary rests upon the party asserting jurisdiction."[13] Ruhrgas, as the removing party, has advanced several theories in support of federal jurisdiction. We address each in turn.

### A. Diversity of Citizenship

 MOC is an Ohio corporation with its principal place of business in Houston, Texas. MIO is a Delaware corporation with its principal place of business in Houston, Texas. Norge is an alien corporation headquartered in Norway. The defendant, Ruhrgas, A.G., is an alien corporation headquartered in Germany.

Norge's status as an alien corporation defeats diversity jurisdiction,[14] unless, as Ruhrgas contends, Norge was fraudulently joined for that very purpose. Among other complaints,[15] Norge contends that Ruhrgas's monopolization of the western European gas market completely prevents both MPN and itself from marketing Heimdal gas reserves to non-consortium buyers and thereby devalues the production license. Ruhrgas responds that Norge cannot complain of any damage to its production license as Norge assigned all of its interests in the Heimdal license to MPN.

█ The party attempting to prove fraudulent joinder has a heavy burden.[16] To establish that a defendant has been joined fraudulently, "the removing party must show [by clear and convincing evidence] either that there is *no possibility* that the plaintiff would be able to establish a cause of action against the [nondiverse] defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts."[17] In making this determination, a court must resolve "all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party."[18]

A close reading of the record and the extensive briefing on fraudulent joinder leave us unconvinced that Norge has been joined fraudulently to defeat diversity jurisdiction. It is not clear what interest Norge possessed when granted the production license, nor can we determine with certainty from the record and briefings what interest *vel non* Norge retains after the Pass Through Agreement. Although Norge maintains that it holds legal title to all unproduced reserves, it is apparent that several other possibilities exist for classifying Norge's property interest. Given Texas's choice of law rules Norwegian law likely would have to be consulted to answer these difficult questions.[19] At this stage in

---

**12.** *Cf. Leffall v. Dallas Indep. School Dist.*, 28 F.3d 521, 524 (5th Cir.1994) ("Removal statutes are to be strictly construed against removal.").

**13.** *Kokkonen*, 511 U.S. at 377, 114 S.Ct. at 1675; *see also Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir.1991) ("The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction.").

**14.** *See Giannakos*, 762 F.2d at 1298 (holding that "[d]iversity does not exist where aliens are on both sides of the litigation").

**15.** At the time the parties filed their appellate briefs, Norge did not have the right to market Heimdal gas under the Pass Through Agreement. Briefing indicated that MPN's rights under the Pass Through Agreement would terminate if it failed to perform certain obligations. Norge predicted that such a reversion would occur as a result of Ruhrgas's activities during the summer of 1996. The current status of the Pass Through Agreement therefore is unclear. Terms in the agreement, however, indicate that Norge may have continuing obligations to the nation of Norway under the original production license and

that Ruhrgas's interference in MPN's activities may be impacting those obligations. Norge also asserts that Ruhrgas has tortiously interfered with MPN's obligations to Norge under the Pass Through Agreement.

**16.** *Ford v. Elsbury*, 32 F.3d 931 (5th Cir.1994).

**17.** *B, Inc.*, 663 F.2d at 549 (footnote omitted).

**18.** *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992); *see also Burden v. General Dynamics Corp.*, 60 F.3d 213 (5th Cir.1995); *B, Inc.*

**19.** *See Cantu v. Bennett*, 39 Tex. 303 (1873) (indicating that the law of the situs would control the characterization of Norge's property interests); *but see Swanson v. Schlumberger Tech. Corp.*, 895 S.W.2d 719 (Tex.App.—Texarkana 1995, writ granted) (indicating that Texas law may control this determination under the "most significant relationship" test). Given the fraudulent joinder standards, we must presume that Norwegian law would apply. *Burden.* There is, however, no evidence of Norwegian law in the record. Even

the proceedings, however, Ruhrgas shoulders the burden of proof, and it simply cannot prove, by clear and convincing evidence, that Norge has absolutely no possibility of recovering damages under any theory of liability. Diversity jurisdiction, therefore, is not present.

### B. Federal Question Jurisdiction

■ Ruhrgas asserts that federal question jurisdiction is present because the "[p]laintiffs' claims raise substantial questions of foreign and international relations and questions of customary international law and act-of-state questions which are incorporated into and form a part of the federal common law." The Marathon plaintiffs note that they have alleged only state law causes of action and contend that the well-pleaded complaint rule bars a finding of federal question jurisdiction.

In *Torres v. Southern Peru Copper Corp.*,[20] we found federal question jurisdiction based on the federal common law of foreign relations. As in *Torres*, the defendant's government, the Republic of Germany, has filed a letter of protest with the State Department and an amicus brief with the court. The similarities between the two cases end there. Our holding in *Torres* is a very specific application of the well-pleaded complaint rule, under which the complaint must state a cause of action necessarily requiring the "resolution of a substantial question of federal law."[21] That test was met in Torres because the suit itself struck directly at vital economic interests of the nation, and, indeed, at the very sovereignty of the Republic of Peru.

The same cannot be said herein for the Republic of Germany. Its amicus brief focuses primarily on two areas: the enforceability and breadth of European arbitration clauses, and the impact on international trade from allowing suits against European companies to proceed in United States courts. Such concerns, though not insubstantial, would describe many international commercial disputes between western European corporations and United States corporations and cannot properly form the basis of federal subject matter jurisdiction.

Ruhrgas appears to be an important gas supplier in Germany and western Europe but this action does not strike at the sovereignty of a foreign nation. The plaintiffs' claims do not call into question official German policy decisions and the Republic of Germany was not a participant in the activities giving rise to this suit. This litigation does not seek to impose liability for injuries to foreign citizens occurring solely on foreign soil, as was the situation in *Torres*. Indeed, Ruhrgas allegedly came to the United States and defrauded a United States company on American soil. Merely requiring a German corporation to abide by state law when present here does not *necessarily* implicate substantial foreign relations issues between the United States and Germany. Further, we remain unconvinced that this suit may impact severely the vital economic interests of a highly developed and flourishing industrial nation such as Germany. Federal question jurisdiction does not exist.

### C. 9 U.S.C. § 205

■ Finally, Ruhrgas claims that this case is removable under 9 U.S.C. § 205 because the plaintiffs' claims relate to an arbitration agreement falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Notably, MOC, MIO, and Norge were not signatories to any arbitration agreement, nor were they parties to any arbitration proceedings.[22]

Under 9 U.S.C. § 205, federal jurisdiction exists if the plaintiffs' claims relate to an arbitration agreement or award falling under

if we were to attempt to apply Texas law, classification of these various interests and the concomitant rights of Norge to pursue damage remedies would be unclear. This alone precludes a finding of fraudulent joinder. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746 (5th Cir.1996).

**20.** 113 F.3d 540, (5th Cir.1997).

**21.** *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983).

**22.** MPN, however, has participated successfully in arbitration proceedings in Europe.

the Convention on the Recognition of Foreign Arbitral Awards. An arbitration agreement or award falling under the Convention is one which arises out of an international commercial legal relationship.[23] No one disputes that the plaintiffs' claims arise from international commercial relationships; the issue is whether any *relevant* arbitration agreement exists between the parties to this litigation, a necessary predicate for federal jurisdiction under 9 U.S.C. § 205.[24] Simply stated, there is no such agreement.[25]

Ruhrgas maintains that the Marathon plaintiffs are attempting to enforce provisions of the Heimdal Gas Agreement, an agreement to which they are not parties. It further characterizes this suit as an inappropriate attempt to circumvent the arbitration agreement under which MPN is bound to arbitrate any disputes concerning the Heimdal Gas Agreement. As such, Ruhrgas contends that the Marathon plaintiffs should be estopped from denying the applicability of the arbitration provisions. We are not persuaded.

MOC and MIO are not seeking redress for wrongs done to MPN. Rather, they allege that Ruhrgas and others jointly participated in a scheme to induce them fraudulently into investing $300 million into MPN. That Ruhrgas may have effectuated this fraud through its contractual relationship with MPN does not lead to the conclusion that MOC and MIO are seeking damages for harm done to MPN. Further, MOC and MIO are not seeking damages for any breach of contract; they could not do so because no contracts exist between them and Ruhrgas.[26] The same is true of Norge's claims. Norge merely claims that Ruhrgas's tortious conduct has affected the value of its production license and impeded its obligations and rights

under the Heimdal license and Pass Through Agreement. Norge is not seeking damages on behalf of MPN, nor has it claimed entitlement to any rights under the Heimdal Gas Agreement.

Finally, Ruhrgas asserts other theories for its thesis that the arbitration provisions in the Heimdal Gas Agreement should apply to all of MPN's corporate affiliates. None is persuasive.

### Conclusion

Concluding that the district court lacked subject matter jurisdiction, we vacate the judgment of the district court and remand with instructions that this action be remanded to the 152nd Judicial District Court of Harris County, Texas.

VACATED and REMANDED.

---

23. *See* 9 U.S.C. §§ 205, 2.

24. *See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.,* 767 F.2d 1140 (5th Cir.1985) (holding that the Convention only applies where (1) there is an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate arises from a commercial legal relationship; and (4) a non-American citizen is a party to the agreement).

25. Ruhrgas acknowledges that none of the Marathon plaintiffs have any contractual relationship

with Ruhrgas and that none of the plaintiffs ever signed an arbitration agreement.

26. Contrary to Ruhrgas's contention that the Marathon plaintiffs are seeking to enforce the pricing arrangements in the Heimdal Gas Agreement, plaintiffs do not seek injunctive relief. Moreover, the plaintiffs would not be entitled to recover the lost profits of MPN, though such figures may be relative in proving the extent of the plaintiffs' damages.